## Amelia R. Johnson et al. v. Rynd L. Stratton.

1. SPECIFIC PERFORMANCE—*Of an Agreement to Transfer Stock, When Not to be Decreed.*—A specific performance of an agreement to transfer stock in a corporation will not be decreed where the complainant's only claim is that he should be reimbursed for money expended for such stock.

Bill for Specific Performance.—Appeal from the Circuit Court of Jefferson County; the Hon. EDMUND D. YOUNGBLOOD, Judge presiding. Heard in this court at the February term, 1903. Reversed and remanded with directions. Opinion filed June 15, 1903.

G. GALE GILBERT, attorney for appellants.

The rule is, not to entertain jurisdiction in equity for specific performance of agreements respecting goods, chattels, stocks, choses in action and other things of a personal nature; a court of equity will not decree specific performance of a contract relating to the sale of personal property at the suit of the vendee, unless there is some feature in it to show that relief at law might not be adequate—as where the thing contracted for has some special value to the

vendee. Anderson v. Olsen, 188 Ill. 502; Pierce v. Plumb, 74 Ill. 326; Barton v. DeWolf, 108 Ill. 195.

In case of breach of contract for the sale of stock in a corporation, compensation in damages may be recovered at law. Barton v. DeWolf, *supra;* Anderson v. Olsen, 188 Ill. 502, *supra;* 1 Story Eq. Jur., 12th Ed., Sec. 718.

Robt. M. Farthing and Eugene M. Peavler, attorneys for appellee.

Mr. Justice Higbee delivered the opinion of the court.

This was a bill in chancery by appellee, Rynd L. Strattan, surviving partner of the firm of R. L. Strattan & Company, for the use of Rynd L. Strattan, against appellants, Amelia R. Johnson and the Mount Vernon Car Manufacturing Company, alleging that for many years prior to December 18, 1897, Rynd L. Strattan and S. T. Strattan were partners doing business in the firm name of R. L. Strattan & Company; that on said date the said S. T. Strattan departed this life testate, leaving Eliza K. Strattan, his widow, Rynd L. Strattan, David F. Strattan, A. M. Strattan, Annie G. Strattan, Emma L. Copeland and Amelia R. Johnson, his children and only heirs-at-law, him surviving; that at the time of the death of the said S. T. Strattan the said firm owned, among other property, thirty-three shares of the capital stock of the Mt. Vernon Car Manufacturing Company; that twenty-three of these shares were of the original issue of stock of said company, for which the said firm held the proper certificates, and ten shares were of the increased capital stock of said company subscribed for about September, 1894, and paid for in full, but the certificate for which had not been issued by said company; that said Annie G. Strattan died in December, 1898, testate and without issue, having never been married; that by her last will she left all her property, except certain legacies, to her sister, said Emma L. Copeland; that afterward, in May, 1899, said Amelia R. Johnson purchased the interest of the widow and all the children of said S. T. Strattan in and to the estate of the latter, both real and

personal, except the interest owned by Rynd L. Strattan; that on May 3, 1899, the said Amelia R. Johnson and Rynd L. Stratten made and exchanged certain instruments in writing conveying to each other certain interests therein described in the estate of said S. T. Strattan; that by virtue of said instruments the said Rynd L. Strattan became the owner, among other property, of the said stock of the Mt. Vernon Car Manufacturing Company, except ten shares thereof which became the property of the said Amelia R. Johnson, which ten shares were of the original issue of the capital stock of said corporation, and were transferred and delivered to the said Amelia R. Johnson; that afterward, about September, 1899, the said Amelia R. Johnson wrongfully and fraudulently represented to said company that she was the owner of said ten shares of the increased capital stock of said corporation and thereby induced said company to issue to her a certificate for the same, although the said corporation and the said Amelia R. Johnson well knew that said Rynd L. Strattan was the owner of said stock and entitled to a certificate therefor. By the prayer of the bill the court was asked to decree that the contract of subscription be specifically performed and carried into execution; that the said Amelia R. Johnson be directed by the order of the court to deliver to the clerk said certificate to said ten shares of increased capital stock of said corporation to be canceled; that the title of said ten shares be decreed to belong to and be confirmed in said Rynd L. Strattan; that said company be ordered and decreed to issue a new certificate for said ten shares of stock to said Rynd L. Strattan and to register the same on the books of the corporation.

A demurrer to the bill was overruled and appellants answered, denying, among other things, that complainant had any interest in or right to the said ten shares of stock in question; denying that he was entitled to the relief sought for and praying the same advantage of the answer as could be had on demurrer.

The decree found the allegations of the bill to be true and ordered that Amelia R. Johnson surrender the ten

shares of stock in question to the Mt. Vernon Car Manu-
facturing Company; that the company cancel said stock
and issue in lieu thereof five shares of the increased capital
stock of said company to the said Amelia R. Johnson and
five shares of the same to the said Rynd L. Strattan and
that said Johnson and Strattan each pay one-half of the
costs of suit.

The title to the twenty-three shares of original stock of
the Mt. Vernon Car Manufacturing Company above referred
to is admitted to have been in the firm of R. L. Strattan &
Company during its existence, and is not in question in this
suit, the only controversy being concerning the ten shares
of the increased capital stock of said company.

It appeared from the proofs that in September, 1894, S.
T. Strattan subscribed for ten shares of the increased capital
stock of said company amounting to $1,000, in the names
of "R. L. Strattan and S. T. Strattan," and that he soon
afterward personally paid $250 on this subscription; that
said subscription was not authorized by R. L. Strattan and
was not afterward ratified by him; that in August, 1897,
the party to whom the company had assigned the claim
was insisting upon the payment of the balance due on said
stock, and threatening to bring suit for the same unless
paid; that said S. T. Strattan was then ill at home, his
death occurring not very long after, and the members of
the family were anxious that he should not be disturbed by
a suit; that he gave his personal check for $250, and R. L.
Strattan, upon the representation of his sister, Annie G.
Strattan, that he should be repaid, borrowed $500 in the
firm's name, and paid the balance due; that the stock was
not issued at that time and that appellee refused to have
anything to do with it; that at a meeting of the stockhold-
ers of the company in 1898, he voted the twenty-three shares
of stock held by the firm, above referred to, but refused to
vote or in any manner answer for the ten shares in ques-
tion.

Appellee himself testified that he got the money to pay
the $500 with the express understanding that he was to be

reimbursed for the same; that the stock at the time was not worth the $500 advanced on it, and he felt he ought not to be burdened in that way. In fact, appellee stated repeatedly in his testimony that he had always expected to be reimbursed, either by his sister Annie or out of his father's estate, for the money he had put in this stock. By the terms of the instrument in writing exchanged between appellee and Amelia R. Johnson, referred to in the bill, appellee and his wife conveyed to Mrs. Johnson, "all the real estate, personal and mixed, of which Stephen T. Strattan died seized, and in which he had or claimed any interest, including the assets of S. T. Strattan & Company, and including all of his estate, choses in action and expectancies, as well as tangible property, except so much thereof as is conveyed and transferred by instrument this day excepted (executed) from said grantee and her husband to Rynd L. Strattan." And the instrument executed by Mrs. Johnson and her husband contained the following provision: " And for the consideration aforesaid the grantors transfer and assign the grantee all interest in the personal assets of the firm of R. L. Strattan and Company, except the car shop stock owned by said firm, $2,000 face value, one-half of which is to be owned by said Amelia R. Johnson and one-half by said R. L. Strattan." Appellee claims that by virtue of the last named instrument he became entitled to the ten shares of stock in question here, although the same are not mentioned therein, such stock being included, as he insists, in the conveyance of "all interest in the personal assets of the firm of R. L. Strattan & Company." There is evidence strongly tending to show that whatever claim he had to be repaid, was considered at the time and included in the settlement, and that Mrs. Johnson turned over to him property of the estate to pay him for the amount advanced for the stock. Whether this is so or not, however, we do not consider of controlling importance in this case. The stock was not subscribed for by the firm of R. L. Strattan & Company, but by S. T. Strattan under the names of "R. L. and S. T. Strattan." Some months prior to the making

of the subscription S. T. Strattan had disposed of his interest in the hardware and implement business in which the firm was engaged, to another person, although the old firm still owned certain real estate and personal assets not disposed of. S. T. Strattan paid one-half of the subscription and appellee denied any interest whatever in the stock transaction up to the time he paid the remaining half with the funds or credit of the firm, and after that time his only claim was that he be reimbursed for the money he had paid out. While he, no doubt, had a claim, either against his sister Annie or the estate of his father, for the repayment of his share of the money advanced by the firm, yet that did not give him a right to have the stock transferred to him as sought by him in his bill. His rights, if any, are shown by the proofs to have been properly enforceable at law and not in equity. The decree must therefore be reversed and the cause remanded with instructions to the court below to dismiss the bill for want of equity.